United States District Court
District of Massachusetts

```
_____
                              )
Kenneth S. Pizzo, Sr.,        )
       Plaintiff,             )
                              )
       v.                     )    Civil Action No.
                              )    09-10526-NMG
Robert R. Gambee and          )
J. Pepper Frazier Co., Inc.,  )
       Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of a disputed lease for certain real property in Nantucket, Massachusetts. Before the Court is defendant's motion to remove the default judgment entered against him and to dismiss plaintiff's claim for multiple damages under Mass. Gen. Laws ch. 93A.

## I. Background

### A. Factual Background

On April 6, 2009, plaintiff Kenneth Pizzo, Sr. ("Pizzo") filed suit against Robert Gambee ("Gambee") and his real estate broker J. Pepper Frazier Co., Inc. ("Frazier") for having leased Gambee's Nantucket residence without disclosing that it was subject to foreclosure proceedings.

Gambee's property at 7 Wingspread Lane on the island of Nantucket ("the Property") was subject to two mortgages. In July, 2007, Wells Fargo Bank, N.A. ("Wells Fargo") initiated

-1-

foreclosure proceedings against the Property after Gambee defaulted on one of the two mortgages. Pizzo entered into a lease dated October 1, 2008, with Gambee to rent the Property for the summer of 2009 for $475,000. Pizzo had previously rented the Property on at least two occasions. As part of the contract, the plaintiff made a down payment of $237,500, of which approximately $71,000 was to be retained by Frazier as a non-refundable fee.

Pizzo alleges that when he entered into the lease, neither Gambee nor Frazier informed him that Wells Fargo had initiated foreclosure proceedings on the Property. Pizzo asked both Gambee and Frazier for assurances that the lease would be performed in full but received no such assurances. The mortgage at issue was not foreclosed upon but Gambee fell behind on payments of the second mortgage after Pizzo failed to make the second payment on the lease for the Property. Gambee's default on the second mortgage ultimately led to a foreclosure on the Property.

**B. Procedural History**

On April 13, 2009, Gambee was served with the Complaint. He did not, however, file an answer or otherwise respond. This Court entered a notice of default against Gambee in June, 2009. On September 21, 2009, the Court issued a final default judgment against Gambee for $712,500 plus costs and pre-judgment interest. That amount erroneously included treble damages pursuant to Mass. Gen. Laws ch. 93A. At a hearing on April 28, 2010, this Court

vacated the treble damage award but allowed Pizzo to supplement his claim by the submission of addition material for the Court's consideration.

Gambee submitted supplemental memoranda (Docket Nos. 53, 57, 62) seeking reconsideration of the Court's denial of the motion to remove the default judgment and its allowance of Pizzo's claim for Chapter 93A damages. Pizzo submitted supplemental memoranda (Docket No. 66) in support of the Court's entry of default judgment and his claim for multiple damages under Chapter 93A.

## II. Analysis

### A. Defendant's Request to Remove Default Judgment

#### 1. Legal Standard

Fed. R. Civ. P. 60(b) provides six grounds for relief from final judgments, including mistake, inadvertence, surprise, excusable neglect or any other reason that justifies relief. It is firmly within the Court's discretion to allow a Rule 60(b) motion. De la Torre v. Cont'l Ins. Co., 15 F.3d 12, 14 (1st Cir. 2004). However, Rule 60(b) is considered a "vehicle for extraordinary relief," and motions attempting to utilize such a tool should be allowed only under "extraordinary circumstances." Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001).

#### 2. Application

Gambee argues that this Court should reconsider the denial

of his motion to vacate the default judgment. To warrant relief, however, under Rule 60(b), Gambee must offer "a convincing explanation as to why the neglect was excusable." Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 527 (1st Cir. 2002). Gambee's explanation does not rise to this standard.

Gambee urges this Court to vacate the default judgment for the following reasons:

1) Gambee's default was not willful,

2) after service of the complaint, he reached out to numerous lawyers,

3) Gambee communicated with the other parties and the Court,

4) other parties would not be prejudiced, and

5) Gambee has meritorious defenses.

None of Gambee's proffered justifications, however, excuse his failure to respond to this Court or to defend himself earlier. At the outset, Gambee acted pro se and while the Court may, in certain situations, be more lenient to pro se litigants, see Hughes v. Rowe, 449 U.S. 5, 9 (1980) (complaints drafted by non-lawyers are to be construed liberally), Gambee's failure to meet the Court's deadlines cannot be excused in this case. See, e.g., Gnossoss v. Christman Mountain Resort, 1994 WL 264129, at *1 (D.N.H. May 16, 1994) (denying pro se defendants' motion to vacate judgment where defendants had received notice of the

complaint and motion for default judgment yet failed to respond); Capizzi v. States Res. Corp., 2005 WL 113679, at *4-5 (D. Mass. Jan. 20, 2005) (pro se defendants' erroneous belief that bankruptcy proceedings would stay their claims in district court did not warrant a finding of excusable neglect).

In this case, Pizzo's summons and complaint as well as Frazier's summons and amended answer were hand-delivered to Gambee's wife by a process server on April 13 and November 21, 2009, respectively. The remaining pleadings were sent to Gambee via first class mail. Gambee was duly served with all such paperwork yet neglected to respond. He neither filed a responsive pleading nor attended the scheduling conference held in November, 2009. Instead, almost two months after the first default judgment was entered against him, he sent a letter to the Court indicating that he had been working to resolve the matter and that he believed it would settle. Then, on January 22, 2010, Gambee filed his motion to vacate the default judgment. The Court denied that motion at a hearing on April 28, 2010.

Gambee's failure to defend still cannot be excused. He is not entitled to have a judgment vacated simply because he subjectively believed that he responded to the case in an appropriate, albeit incorrect, manner. Nor is he excused from not having filed a responsive pleading because he believed the case would settle. See Claremont Flock Corp. v. Alm, 281 F.3d

297, 299-300 (1st Cir. 2002) (denying Rule 60(b) motion of pro se defendant who, notwithstanding his failure to respond to court orders, motions and discovery requests, believed his letter to the court would "put an end to the litigation").

Thus, because Gambee has not met the strict standard for excusable neglect or any other ground for relief from the default judgment against him, the Court affirms the denial of his motion to remove default judgment.

### B. Plaintiff's Claim for Multiple Damages and Attorney's Fees Pursuant to Mass. Gen. Laws ch. 93A

#### 1. Legal Standard

When a defendant fails to answer in response to a complaint seeking multiple damages pursuant to Chapter 93A, the default will establish liability but leave open the question of relief. See, e.g., Castanouribe v. McBride, 2001 Mass. App. Div. 172, 173, 2001 WL 920697 (2001); Multi Tech., Inc. v. Mitchell Mgmt. Sys., Inc., 518 N.E.2d 854, 856-57 (Mass. App. Ct. 1988). A default judgment does not bind the Court to the damages claimed in a complaint. Jensen v. Jordan, 1994 Mass. App. Div. 82, 82-83, 1994 WL 163222 (1994); see Plasko v. Orser, 364 N.E.2d 1220, 1222-23 (Mass. 1977).

Chapter 93A permits the award of multiple damages if a fact-finder determines that a "willful or knowing violation occurred." Anderson v. Comcast Corp., 500 F.3d 66, 74 (1st Cir. 2007) (internal quotations omitted). A subjectively culpable state of

mind is required to establish a willful or knowing violation. See Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 821-22 (Mass. 1991). A negligent act, however, does not render the conduct willful or knowing for the purpose of Chapter 93A multiple damages. Wang Labs., Inc. v. Bus. Incentives, Inc., 501 N.E.2d 1163, 1166 (Mass. 1986). Whether an act warrants the award of double or treble damages must be based upon the specific facts of each case. Noyes v. Quincy Mut. Fire Ins. Co., 389 N.E.2d 1046, 1048 (Mass. App. Ct. 1979). To succeed on such a claim requires proof of a significant level of "rascality," typically involving "immoral, unethical, oppressive or unscrupulous" behavior. Damon v. Sun Co., Inc., 87 F.3d 1467, 1484 (1st Cir. 1996) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)); see Haddad Motor Group, Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C., 603 F.3d 1, 6 (1st Cir. 2010).

### 2. Application

Pizzo argues that he is entitled to multiple damages and attorney's fees because Gambee acted willfully and knowingly in withholding information regarding the foreclosure proceedings on the Property. Pizzo further contends that Gambee did not make a reasonable settlement offer in response to the February, 2009 demand letter. Gambee responds that he intended to perform on the rental contract fully and further asserts that, at the time,

he believed Pizzo knew of the possibility of foreclosure proceedings on the Property.  Pizzo denies such knowledge and claims that his attempts to obtain assurances from Gambee and Frazier were ignored.

Here, there is little substantive evidence from either party.  Both sides rely primarily on affidavits, each contradicting the other on almost all points.  The Court is faced with a "he-said-he-said" argument between former friends over the astronomical rent due on (and the unfortunate foreclosure with respect to) a seasonal residence on Nantucket.

Even assuming the validity of all allegations set forth in the memoranda, Gambee's actions do not rise to the level of rascality or "immoral, unethical, oppressive or unscrupulous" behavior which is the predicate for the award of Chapter 93A multiple damages.  Compare Damon, 87 F.3d at 1484 (affirming refusal to award multiple damages because defendant's misrepresentation did not meet the necessary level of rascality), with Haddad Motor Group, 603 F.3d at 8-11 (affirming finding that accountants who concealed client's tax liability and knowingly misstated a tax due, causing the client to incur penalties and interest, warranted 93A multiple damages).  Gambee's conduct was not "the kind of knowing omission" that would warrant the award of multiple damages, nor did he deliberately fail to disclose "information necessary to make affirmative statements complete."

See Winter Panel Corp. v. Reichhold Chems., Inc., 823 F. Supp. 963, 975 (D. Mass. 1993) (finding defendant's statement that it had sufficient expertise to produce a product combined with its omission of the fact that it lacked specific experience did not rise to requisite level of rascality).

Upon consideration of the kinds of conduct that warrant Chapter 93A multiple damages, the Court finds that Gambee's actions do not fall within that range. Pizzo will not, therefore, be entitled to Chapter 93A multiple damages.

### ORDER

In accordance with the foregoing, defendant Gambee's requests to remove the default judgment entered against him set forth in Docket Nos. 52, 57 and 62, which are treated as motions, are **DENIED**, and plaintiff's request for the award of multiple damages under Mass. Gen. Laws ch. 93A set forth in Docket No. 66, which is treated as a motion, is **DENIED**.

**So ordered.**

                                              /s/ Nathaniel M. Gorton
                                              Nathaniel M. Gorton
                                              United States District Judge

Dated December 3, 2010